1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              EASTERN DISTRICT OF CALIFORNIA

10

11   FARYAL KABIR, THE GUARDIAN OF           No. 2:22-cv-01661-TLN-DB
     THE CANINE COMPANION ZEUS,

12                  Plaintiff,

13         v.                                 **ORDER**

14   CITY OF ELK GROVE; BOBBIE
     SINGH-ALLEN, ACTING MAYOR OF
15   ELK GROVE; AND DOES 1–10,

16                  Defendants.

17

18         This matter is before the Court on Plaintiff Faryal Kabir's ("Plaintiff) Motion for

19   Temporary Restraining Order ("TRO").  (ECF No. 3.)  Defendants City of Elk Grove (the "City")

20   and Mayor Bobbie-Singh Allen (collectively, "Defendants") filed an opposition.  (ECF No. 13.)

21   Plaintiff filed a reply.  (ECF No. 14.)  For the reasons set forth below, Plaintiff's motion is

22   DENIED.  The Court also STAYS the instant action in part.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

                                                  1

1    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

2         The instant motion seeks to enjoin Defendants from euthanizing her dog, Zeus.  (ECF No.

3    3.)  Plaintiff also seeks one of the following pending litigation: (1) enjoin Defendants to properly

4    care for and shelter Zeus until further orders are given; (2) allow Rocket Dog Rescue to hold

5    Zeus; or (3) return Zeus to Plaintiff.[1]  (*Id.*)

6         This case arises out of the City designating Zeus as a dangerous animal and Plaintiff being

7    accused of noncompliance with the City's dangerous animal restrictions.  (ECF No. 11 at 2.)  On

8    May 16, 2022, there was an incident between Zeus and a man, which resulted in Zeus biting the

9    man on both legs.  (*Id.* at 4; ECF No. 13-2 at 2, 5–6.)  Defendants assert the man was on the

10   public sidewalk, and Plaintiff contends he was by the end of her driveway.  (ECF No. 11 at 4;

11   ECF No. 13 at 5.)  The parties also dispute the extent of the man's injuries.  (*See* ECF No. 11 at 4;

12   ECF No. 13 at 5.)  On May 25, 2022, the City designated Zeus as a dangerous animal, a

13   designation Plaintiff sought to dispute.  (ECF No. 11 at 5; ECF No. 13-2 at 8–10.)

14        On June 8, 2022, an administrative hearing regarding the dangerous animal designation

15   was held via Zoom.  (ECF No. 11 at 5; ECF No. 13-2 at 16.)  Plaintiff contends she attempted to

16   attend the hearing, but she could not attend due to technical issues.  (ECF No. 11 at 5.)  Plaintiff

17   then phoned the hearing officer, but she was told she could not attend the hearing via phone.  (*Id.*)

18   The hearing continued in Plaintiff's absence and Plaintiff was unable to assert a provocation

19   defense for Zeus.  (*Id.*)

20        On June 15, 2022, the hearing officer issued an order finding the City had proven by a

21   preponderance of the evidence that Zeus is a dangerous animal within the meaning given in the

22   Elk Grove Municipal Code ("EGMC").  (ECF No. 13-2 at 16–21.)  The order provided that

23   Plaintiff had 30 days from the issuance of a dangerous dog designation to comply with all

24   restrictions regarding Zeus.  (*Id.* at 19.)  Plaintiff alleges she provided evidence of compliance,

25   _____

26   [1]    Plaintiff's First Amended Complaint ("FAC") is verified in that she has declared under
     penalty of perjury the statements made in the FAC are true and correct, except as to the
27   statements made upon information and belief.  (ECF No. 11 at 23.)  Factual allegations in a
     verified complaint may serve as the basis for a TRO.  *Right to Life of Cent. Cal. v. Bonta*, 562 F.
28   Supp. 3d 947, 951 n.1 (E.D. Cal. 2021).

1  but before the 30-day period to comply elapsed the City's animal control and police seized Zeus.

2  (ECF No. 11 at 5.)  Plaintiff alleges animal control demanded Plaintiff put Zeus in their truck.

3  (*Id.* at 5–6.)

4      A video recording from the seizure shows Plaintiff attempting to place a leashed and

5  unmuzzled Zeus in the back of the City's animal control truck.[2]  Elk Grove Police Dep't,

6  *Dangerous Dog Case*, YouTube (Sept. 22, 2022),

7  https://www.youtube.com/watch?v=ErQDkFJzZMQ.  At that time, the City's police and animal

8  control officers were several feet behind the truck.  *Id.*  As Plaintiff and Zeus were nearing the

9  rear of the truck, Zeus barked and began running at the officers while continuing to bark.  *Id.*  The

10 officers backed up, but Zeus continued to advance toward them despite Plaintiff holding onto his

11 leash.  *Id.*  Zeus then bit one of the officers on his left leg causing a tear in the officer's pant leg.

12 *Id.*  Plaintiff then placed Zeus in the back of truck.  *Id.*  One of the officers asked, "You have

13 broken skin?" to the officer who was bitten.  *Id.*  After inspecting his leg, the officer who was

14 bitten replied, "Yeah."  *Id.*  Plaintiff alleges a criminal misdemeanor change was placed against

15 her on July 15, 2022, for failure to comply pursuant to the EGMC.  (ECF No. 11 at 8.)

16     On August 15, 2022, a second administrative hearing took place before a different hearing

17 officer.  (*Id.* at 6; ECF No. 13-2 at 30.)  After the hearing, Plaintiff alleges the hearing officer

18 asked for post-hearing objections, which the City submitted along with video evidence.  (ECF No.

19 11 at 6.)  Plaintiff alleges she submitted proof of compliance after the hearing, but it was not

20 admitted.  (*Id.*)  Plaintiff further contends the City made an *ex parte* communication with the

21 hearing officer after the hearing instead of using the correct procedure.  (*Id.*)

22     On September 2, 2022, an order from the second hearing was issued.  (ECF No. 13-1 at

23 52–61.)  The order found Zeus had violated two provisions of the EGMC, and therefore, Zeus

24 was to be humanely euthanized.  (*Id.* at 60.)  The order also provided a five-day period to appeal

25 the order, and that any appeal would be trial de novo.  (*Id.* at 61.)  The hearing officer later issued

26 an amended order changing the right to judicial review.  (ECF No. 13-2 at 30 n.1.)  The amended

27

28  [2]     The video recording was provided via a weblink in a declaration in support of Defendants'
        opposition.  (ECF No. 13-2 at 3.)

1  order stated a party could seek judicial review by filing a petition for review with the Sacramento

2  County Superior Court.  (*Id.* at 39.)

3          On August 16, 2022, Plaintiff filed a petition for a writ of administrative mandate in the

4  Sacramento County Superior Court, case no. 34-2022-80003929 (the "First State Court Action").[3]

5  (*Kabir v. City of Elk Grove*, 34-2022-80003929-CU-WM-GDS (Sacramento Sup. Ct. 2022).)  On

6  September 13, 2022, Plaintiff filed her first amended verified petition for writ of mandate (the

7  "Amended Writ Petition").  (ECF No. 13-1 at 5.)  The Amended Writ Petition alleges: (1) federal

8  and state procedural due process violations stemming from the administrative hearings on June

9  8th and August 15th; (2) portions of the EGMC relating to dangerous dogs are in conflict with

10  California law and void under Article XI, § 7 of the California Constitution; and (3) violation of

11  the "takings" provisions of the United States Constitution and California Constitution.  (*See id.* at

12  5–23.)

13          Also on September 13, 2022, Plaintiff filed an emergency *ex parte* motion to stay Zeus'

14  euthanasia in the First State Court Action.  (*Id.* at 26.)  On September 14, 2022, the City filed its

15  opposition to Plaintiff's *ex parte* motion.  (*Id.* at 38.)  That same day, the superior court issued a

16  minute order denying Plaintiff's *ex parte* motion.  (*Id.* at 49.)  The minute order states, "Based

17  upon the information presented, the Court denies Petitioner's Application."  (*Id.*)  However, the

18  First State Court Action's docket shows the case remains pending and judgment has not been

19  entered.  (*Kabir v. City of Elk Grove*, 34-2022-80003929-CU-WM-GDS (Sacramento Sup. Ct.

20  2022).)

21          On September 6, 2022, Plaintiff appealed the order from the August 15th administrative

22  hearing to the Sacramento County Superior Court, case no. 34-2022-00326595 (the "Second State

23  Court Action").  (ECF No. 13-1 at 51; *Kabir v. City of Elk Grove Animal Servs.*, 34-2022-

24  00326595-CL-PT-GDS (Sacramento Sup. Ct. 2022).)  On September 21, 2022, the superior court

25  issued an order granting the City's motion to dismiss Plaintiff's request for appeal by trial de

26  _____

27  [3]      Defendants filed a declaration attaching filings from the First State Court Action and the
Second State Court Action.  (ECF No. 13-1.)  The Court also takes judicial notice of the filings
and dockets in the two cases.  *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012)

28  (noting courts may take judicial notice of documents on file in state courts).

novo.  (ECF No. 13-1 at 117–118.)  The Second State Court Action's docket reflects this case has been dismissed.  (*See Kabir v. City of Elk Grove Animal Servs.*, 34-2022-00326595-CL-PT-GDS (Sacramento Sup. Ct. 2022).)

On September 21, 2022, Plaintiff initiated the instant action and filed her complaint. (ECF No. 1.)  Also on September 21, 2022, Plaintiff filed the instant motion for TRO.  (ECF No. 3.)  On September 22, 2022, Plaintiff filed her FAC.  (ECF No. 11.)  The FAC alleges six causes of action: (1) 42 U.S.C. § 1983 for Fourth, Fifth, and Fourteenth Amendment violations; (2) 42 U.S.C. § 1983 for procedural due process violations; (3) a constitutional challenge to portions of the EGMC regulating dangerous animals; (4) a due process claim concerning the burden of proof; (5) declaratory relief; and (6) violation of the Article XI, Section 7 of the California Constitution. (*Id.*)  On September 22, 2022, the Court issued an order enjoining Defendants from euthanizing Zeus until September 28, 2022 in order to preserve the status quo until Defendants had a chance to respond to the motion for TRO.  (ECF No. 12.)  On September 26, 2022, Defendants filed their opposition to the motion.  (ECF No. 13.)  On September 27, 2022, Plaintiff filed her reply.  (ECF No. 14.)

## II.    STANDARD OF LAW

A TRO is an extraordinary remedy.  The purpose of a TRO is to preserve the status quo pending a fuller hearing.  *See* Fed. R. Civ. P. 65.  In general, "[t]emporary restraining orders are governed by the same standard applicable to preliminary injunctions."  *Aiello v. One West Bank*, No. 2:10-cv-0227-GEB-EFB, 2010 WL 406092, at *1 (E.D. Cal. Jan. 29, 2010) (internal citations omitted); *see also* E.D. Cal. L.R. 231(a).

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).  "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Costa Mesa City Emps. Ass'n v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final determination following a

1  trial."); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo

2  ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last

3  uncontested status which preceded the pending controversy.").

4  　　　"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed

5  on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief,

6  [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."

7  *Winter*, 555 U.S. at 20.  A plaintiff must "make a showing on all four prongs" of the *Winter* test

8  to obtain a preliminary injunction.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th

9  Cir. 2011).  In evaluating a plaintiff's motion for preliminary injunction, a district court may

10  weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A

11  stronger showing on the balance of the hardships may support issuing a preliminary injunction

12  even where the plaintiff shows that there are "serious questions on the merits . . . so long as the

13  plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the

14  public interest."  *Id.*  Simply put, plaintiffs must demonstrate, "that [if] serious questions going to

15  the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in [p]laintiffs' favor

16  in order to succeed in a request for preliminary injunction.  *Id.* at 1134–35.

17  　　　**III.   ANALYSIS**

18  　　　In the Court's September 22nd Order granting Plaintiff's motion for TRO until September

19  28, 2022, the Court stated it had questions regarding its jurisdiction to hear this case because of

20  Plaintiff's unsuccessful actions in the superior court.  (ECF No. 12 at 5.)  In making this

21  statement, the Court cited to cases applying the *Rooker-Feldman* doctrine.  (*Id.* (citing *Irlina v.*

22  *City of Oakland, Oakland Animal Servs. Div.*, No. 14-cv-00381-TEH, 2014 WL 806390, at *3

23  (N.D. Cal. Feb. 27, 2014); *Jones v. Tulare Cty.*, No. 1:15-cv-01779-EPG, 2016 WL 7034744, at

24  *9–10 (E.D. Cal. Dec. 1, 2016)).)  Therefore, the Court will determine whether the *Rooker-*

25  *Feldman* doctrine applies, and if not, whether another doctrine, such as *Younger* abstention,

26  applies due to the First State Court Action and Second State Court Action.

27  ///

28  ///

1        A.      The *Rooker-Feldman* Doctrine

2              As stated, the Court's September 22nd Order questioned the Court's jurisdiction to hear

3    the instant case and cited to cases applying *Rooker-Feldman*.  (ECF No. 12 at 5.)  However, now

4    that the instant motion has been fully briefed and the Court has been more fully apprised of

5    Plaintiff's superior court actions, the Court finds the *Rooker-Feldman* doctrine to be inapplicable.

6              The First State Court Action remains pending and judgment has not been entered.  (*Kabir*

7    *v. City of Elk Grove*, 34-2022-80003929-CU-WM-GDS (Sacramento Sup. Ct. 2022).  Instead, the

8    superior court only issued a minute order denying Plaintiff's *ex parte* motion to stay Zeus'

9    euthanasia.  (ECF No. 13-1 at 49.)  Thus, *Rooker-Feldman* does not apply because there has been

10   no final judgment from the superior court.  *See Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003)

11   ("Under *Rooker-Feldman*, a federal district court does not have subject matter jurisdiction to hear

12   a direct appeal from the final judgment of a state court.").

13             The Second State Court Action resulted in the dismissal of Plaintiff's request for appeal

14   by trial de novo.  (ECF No. 13-1 at 117–18).  Therefore, *Rooker-Feldman* is inapplicable because

15   the superior court "did not analyze [P]laintiff's contentions on the merits."  *See Snowden v. Cty.*

16   *of Calaveras*, No. 1:18-cv-01595-DAD-SAB, 2019 WL 4829480, at *5 (E.D. Cal. Sept. 30, 2019)

17   (finding the *Rooker-Feldman* doctrine did not apply to a superior court order denying as untimely

18   a challenge to a county order).

19             Therefore, based upon the current status of Plaintiff's superior court proceedings, the

20   *Rooker-Feldman* doctrine does not apply.  Thus, the Court does not lack subject matter

21   jurisdiction over the instant action due to *Rooker-Feldman*.

22       B.      The *Younger* Abstention Doctrine

23             "In 'exceptional circumstances,' the *Younger* abstention doctrine instructs federal courts

24   to decline to hear a case when a parallel state proceeding is ongoing."  *Applied Underwriters, Inc.*

25   *v. Lara*, 37 F.4th 579, 587–88 (9th Cir. 2022) (citing *New Orleans Pub. Serv., Inc. v. Council of*

26   *New Orleans*, 491 U.S. 350, 368 (1989)).  The doctrine applies to three categories of cases:

27   "(1) parallel, pending state criminal proceedings[;] (2) state civil proceedings that are akin to

28   criminal prosecutions[;] and (3) state civil proceedings that implicate a State's interest in

7

1   enforcing the orders and judgments of its courts." *Herrera v. City of Palmdale*, 918 F.3d 1037,

2   1043 (9th Cir. 2019).  If a state proceeding falls into one of these categories, *Younger* abstention

3   may apply so long as three additional factors are also met.  *Id.* at 1044.  The additional factors are

4   that the state proceeding must be: (1) ongoing; (2) implicate important state interests; and

5   (3) provide adequate opportunity to raise constitutional challenges.  *Applied Underwriters*, 37

6   F.4th at 588 (9th Cir. 2022).  Additionally, the requested relief in the federal proceeding must

7   seek to enjoin or have the practical effect of enjoining the ongoing state proceeding.  *ReadyLink*

8   *Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014).

9          "*Younger* abstention is mandatory[.]"  *Canatella v. California*, 404 F.3d 1106, 1117 (9th

10   Cir. 2005); *Pachal v. Bugreeff*, 495 F. Supp. 3d 963, 966 (D. Mont. 2020) (noting that when all

11   *Younger* requirements are met, a district court lacks discretion to hear the case).  However, even if

12   the *Younger* factors are satisfied, there are exceptions that would make abstention inappropriate.

13   *Bean v. Matteucci*, 986 F.3d 1128, 1133 (9th Cir. 2021).

14          *Younger* abstention may be raised *sua sponte* at any time.  *Columbia Basin Apartment*

15   *Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001); *Citizens for Free Speech, LLC v. Cty.*

16   *of Alameda*, 338 F. Supp. 3d 995, 1002 & n.6 (N.D. Cal. 2018), *aff'd*, 953 F.3d 655 (9th Cir.

17   2020).

18          The Court begins by determining whether Plaintiff's superior court actions, and the

19   underlying administrative hearings, fall into one of the three categories that may be subject to

20   *Younger* abstention.  If so, the Court will examine whether the additional factors for *Younger* to

21   apply have been met and if any exceptions apply.

22                      *i.      The Categories of Cases Under* Younger *Abstention*

23          One of the categories of cases that can be subject to *Younger* abstention is civil

24   enforcement proceedings that are akin to criminal proceedings.  *See ReadyLink Healthcare*, 754

25   F.3d at 759.  A civil enforcement action is akin to a criminal proceeding when the action is

26   "characteristically initiated to sanction the federal plaintiff . . . for some wrongful action" and

27   "[i]nvestigations are commonly involved."  *Id.*  A municipal administrative proceeding, and the

28   appeal of that proceeding to state court, can also qualify as civil enforcement actions under

1    *Younger* abstention.  *See Joseph v. City of San Jose*, No. 19-CV-01294-LHK, 2020 WL 1031899,

2    at *12 (N.D. Cal. Mar. 3, 2020) (finding *Younger* abstention could apply to a city administrative

3    proceeding involving municipal code violations); *see Villa San Clemente, LLC v. City of San*

4    *Clemente*, No. SACV 17-1484 JVS(JCGx), 2017 WL 8793227, at *3–4 (C.D. Cal. Dec. 22, 2017)

5    (finding an appeal in state court following a city's administrative citation proceeding was a quasi-

6    criminal enforcement proceeding).

7         Here, "at the heart of Plaintiff's [F]AC [are] [City] administrative proceeding[s] that

8    involve[] municipal code violations." *Joseph*, 2020 WL 1031899, at *12; *see also Cal. Outdoor*

9    *Equity Partners v. City of Corona*, No. CV 15-03172 MMM AGRX, 2015 WL 4163346, at *7

10   (C.D. Cal. July 9, 2015) (noting *Younger* applies to a city's civil action to enjoin a public

11   nuisance).  The August 15th administrative hearing was conducted "to decide whether or not to

12   uphold the City of Elk Grove Police Department Animal Services Division . . . determination that

13   [Plaintiff], owner of a German Shepherd dog named Zeus, violated [EGMC §§] 8.06.080 and

14   8.06.090."  (ECF No. 13-2 at 30.)  Therefore, a division of the City had already determined that

15   Plaintiff violated the EGMC.  Thus, the August 15th administrative hearing had been "initiated to

16   sanction [Plaintiff] . . . for some wrongful action."  *ReadyLink Healthcare*, 754 F.3d at 759.

17   Moreover, the June 8th administrative hearing followed the City's investigation into the first bite

18   incident by Zeus.  (*See* ECF No. 13-2 at 2, 24.)  Because the August 15th administrative hearing

19   concerned whether Plaintiff violated EGMC §§ 8.06.080 and 8.06.090, at stake was whether Zeus

20   would be euthanized.[4]  (*See id.* at 38.)

21   ///

22

23   [4]     Defendants request the Court take judicial notice of two chapters of the EGMC.  (ECF No.
     13-3.)  "Municipal ordinances are proper subjects for judicial notice."  *Tollis, Inc. v. Cty. of San*
24   *Diego*, 505 F.3d 935, 938 (9th Cir. 2007).  Therefore, the Court GRANTS Defendants' request
     for judicial notice.
25
26        The Court notes that EGMC § 8.06.110 provides that the failure to comply with the
     requirements to keep, harbor, own, possess, or control any dangerous animal constitutes a
27   misdemeanor.  (ECF No. 13-3 at 21.)  Although the administrative hearings do not appear to be
     criminal in nature, Plaintiff's FAC alleges a misdemeanor charge was placed against her pursuant
28   to EGMC § 8.06.110.  (ECF No. 11 at 8.)

                                                    9

1      Judicial review of an administrative proceeding is treated as a unitary process.  *Mir v.*

2  *Kirchmeyer*, No. 12cv2340-GPC-DHB, 2014 WL 2436285, at *11 (S.D. Cal. May 30, 2014);

3  *Howard Jones Invs., LLC v. City of Sacramento*, No. 2:15-cv-954-JAM-KJN, 2016 WL 1599511,

4  at *2 (E.D. Cal. Apr. 21, 2016) (noting that after the administrative hearing and appeal, the

5  plaintiff filed a writ for state-court judicial review).  Therefore, the Court considers the

6  administrative hearings and Plaintiff's superior court actions together when determining if they

7  fall within a category of cases that may be subject to *Younger* abstention.  As such, the reasons

8  why the administrative hearings are civil enforcement proceedings also applies to Plaintiff's

9  superior court actions.  *See Villa San Clemente*, 2017 WL 8793227, at *3–4.

10      Accordingly, Plaintiff's superior court actions are civil enforcement proceedings and fall

11  within a category of cases that may be subject to *Younger* abstention.

12                 *ii.*        *Additional* Younger *Abstention Factors*

13      As stated, the additional *Younger* factors are that the state proceeding must be: (1)

14  ongoing; (2) implicate important state interests; and (3) provide adequate opportunity to raise

15  constitutional challenges.  *Applied Underwriters*, 37 F.4th at 588.  Additionally, the requested

16  relief in the federal proceeding must seek to enjoin or have the practical effect of enjoining the

17  ongoing state proceeding.  *ReadyLink Healthcare*, 754 F.3d at 758.  The Court examines each of

18  these factors in turn.

19                 a.        Ongoing State Proceeding

20      The first factor is satisfied if the state proceeding was pending when the federal action was

21  filed.  *Columbia Basin*, 268 F.3d at 801.  In determining whether a proceeding is going, courts

22  consider judicial review of an administrative proceeding as a unitary process.  *See Mir*, 2014 WL

23  2436285, at *11; *Howard Jones*, 2016 WL 1599511, at *2 ("[T]he proceeding is on-going,

24  because after the administrative hearing and appeal, [the plaintiff] filed a writ for state-court

25  judicial review.").

26      Here, the First State Court Action was filed on August 16, 2022 and that case remains

27  pending.  (*Kabir v. City of Elk Grove*, 34-2022-80003929-CU-WM-GDS (Sacramento Sup. Ct.

28  2022).  Indeed, Plaintiff's reply acknowledges that her writ request in the First State Court Action

1   is pending.  (ECF No. 14 at 9.)  On the other hand, the Second State Court Action was filed on

2   September 6, 2022 and that case was dismissed on September 21, 2022.  (*Kabir v. City of Elk*

3   *Grove Animal Servs.*, 34-2022-00326595-CL-PT-GDS (Sacramento Sup. Ct. 2022).  The instant

4   action was filed on September 21, 2022.  (ECF No. 1.)  Therefore, although the Second State

5   Court Action was no longer pending when the instant action was filed, the First State Court

6   Action was.  Thus, the first factor is met with regard to the First State Court Action.[5]

7                                      b.        Implication of Important State Interests

8            The second factor requires the ongoing state proceeding to implicate important state

9   interests.  *Applied Underwriters*, 37 F.4th at 588.  The importance of a state's interest "is

10  measured by considering its significance broadly, rather than by focusing on the state's interest in

11  the resolution of an individual case."  *Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 618 (9th

12  Cir. 2003).  The second factor may be met due to a municipality's interest in its municipal code

13  and acting for the benefit of its residents.  *Columbia Basin*, 268 F.3d at 801 (finding the second

14  factor met because of the city's strong interest in its land-use ordinance and in maintaining

15  habitable dwellings for its residents).

16           Here, the First State Court Action implicates important state interests.  That action is the

17  judicial review of the administrative hearings on June 8th and August 15th.  The administrative

18  hearings, and thereby the First State Court Action, concern the City's enforcement of the

19  dangerous animal requirements in the EGMC against Plaintiff.  The City has a strong interest in

20  enforcing the EGMC.  *See Columbia Basin*, 268 F.3d at 801.  The City also has a strong interest

21  in the safety of its residents, including by protecting them against dog bites.  *See id.*  Therefore,

22  the second factor is met.

23  ///

24  ///

---

25  [5]        The FAC argues *Younger* does not apply because "there is no ongoing state proceeding
26  complaint and this action does not challenge any state interest or procedure."  (ECF No. 11 at 4.)
    The Court notes that this argument may be related to another case because it states *Younger* does
27  not bar the instant action from being heard in the "Northern District of California."  (ECF No. 11
    at 4.)  However, even if Plaintiff's argument concerns the instant action, it is without merit
28  because the First State Court Action is still pending as Plaintiff has acknowledged.

                                                    11

c.      Adequate Opportunity to Raise Constitutional Challenges

For the third factor, "[s]tate court proceedings are presumed adequate to raise the federal claim[s] 'in the absence of unambiguous authority to the contrary.'" *Fedex Ground Package Sys., Inc. v. Ingenito*, 86 F. Supp. 3d 1121, 1129 (E.D. Cal. 2015) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987)).

Here, there is no unambiguous authority showing the First State Court Action, or any further state court proceedings, are inadequate to raise the constitutional challenges that Plaintiff asserts in the instant action. Indeed, the Amended Writ Petition asserts many, if not all, of the federal constitutional challenges that Plaintiff asserts in the instant case. (*Compare* ECF No. 13-1 at 12–23 *with* ECF No. 11 at 9–23.) Thus, the third factor is met.

d.      Effect of Enjoining State Proceedings

As stated, for *Younger* to apply, the requested relief in the federal proceeding must seek to enjoin or have the practical effect of enjoining the ongoing state proceeding. *ReadyLink Healthcare*, 754 F.3d at 758. Although "direct" interference is not required, there must be some interference with state court proceedings for *Younger* to apply. *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 n.9 (9th Cir. 2007). Additionally, "*Younger* principles may apply to claims for damages under § 1983." *Gilbertson v. Albright*, 381 F.3d 965, 979 (9th Cir. 2004) (en banc).

Plaintiff's federal constitutional claims "represent a collateral constitutional challenge to the pending [First State Court Action and its review of the administrative hearings]." *Morning Hill Foods, LLC v. Hoshijo*, 259 F. Supp. 3d 1113, 1124 (D. Haw. 2017). All but Plaintiff's sixth claim allege federal constitutional violations or seek declaratory relief for those violations. (ECF No. 11 at 9–19.) Additionally, Plaintiff's sixth claim is a collateral constitutional challenge to the pending First State Court Action and its review of the administrative hearings based on an alleged violation of the California Constitution. (*Id.* at 19–20.) Therefore, Plaintiff's claims "go to the heart of h[er] opposition to the [City's] action in the [administrative hearings and First State Court Action], such that [the Court's] decision on the merits of [Plaintiff]'s claims would have the same

1    practical effect on the state proceeding as an injunction."[6]  *Gilbertson*, 381 F.3d at 982; *see also*

2    *Morning Hill*, 259 F. Supp. 3d at 1124.

3         Plaintiff argues she is not seeking to hold a state court judgment to be unconstitutional.

4    (ECF No. 14 at 9.)  However, the First State Court Action is Plaintiff seeking judicial review of

5    the administrative hearings, and judicial review of administrative hearings and the administrative

6    hearings themselves are considered a unitary process.  *See Mir*, 2014 WL 2436285, at *11;

7    *Howard Jones*, 2016 WL 1599511, at *2.  Therefore, the fact that Plaintiff requests relief

8    concerning the administrative hearings themselves, rather than the judicial review of those same

9    hearings, does not mean Plaintiff's requested relief would have no effect on the First State Court

10   Action.  *See Villa San Clemente*, 2017 WL 8793227, at *5 (finding a federal action, in which the

11   plaintiff sought a declaration that the city code was unconstitutional, would have the practical

12   effect of enjoining a state court appeal following an administrative hearing for a city citation).

13        Plaintiff also contends the First State Court Action is limited to the administrative hearing

14   and it does not challenge the provisions of the EGMC that Plaintiff challenges in the instant

15   action.  (ECF No. 14 at 9.)  However, this contention is contradicted by the Amended Writ

16   Petition.  Among Plaintiff's request for relief in the Amended Writ Petition is the issuance of a

17   writ of mandate that the City cannot enforce the EGMC in a manner that violates due process,

18   including how EGMC § 8.06.090 contains arbitrary and capricious language.  (ECF No. 13-1 at

19   22.)  Thus, Plaintiff is attempting to challenge the EGMC in the First State Court Action.

20        Plaintiff argues the Court has parallel jurisdiction while the First State Court Action is

21   pending.  (ECF No. 14 at 10.)  As part of this argument, Plaintiff cites to and provides a hearing

22   transcript from the case of *Hobbs v. Cty. of San Joaquin*, No. 2:12-cv-02290-JAM-KJN (E.D.

23   Cal. Sept. 19, 2012).[7]  (ECF No. 15 at 8.)  Plaintiff asserts *Hobbs*, which involved a federal due

24   _____

25   [6]    In the instant action, Plaintiff's requested relief includes injunctive relief returning Zeus to
     Plaintiff and declaratory relief that Defendants violated Plaintiff's federal constitutional rights
26   when they seized and kept Zeus.  (ECF No. 11 at 20.)  Whether the City rightfully "seized" Zeus
     is at issue in the First State Court Action.

27   [7]    Plaintiff requests the Court take judicial notice of the hearing transcript in *Hobbs* as well
28   as a decision of the Washington Court of Appeals.  (ECF No. 15 at 1.)  Plaintiff also requests

13

1  process challenge in federal court and a writ petition proceeding in the superior court, presents

2  similar circumstances to the instant action.  (ECF No. 14 at 10 & n.5.)  Plaintiff points to a

3  portion of the hearing transcript, in which the *Hobbs* court stated the superior court writ petition

4  could "proceed along a parallel track in which [Hobbs was] going to challenge the actual

5  conclusions and findings themselves."  (ECF No. 15 at 20.)  However, the Court finds *Hobbs* to

6  be distinguishable because the *Hobbs* court did not expressly consider nor reference *Younger*

7  abstention during the hearing, and nor did the *Hobbs* court have an adequate opportunity to do so

8  because it was only informed of the superior court writ petition during the hearing.[8]  (*See* ECF

9  No. 15 at 19–20.)

10  Accordingly, the Court finds the effect of enjoining state proceedings factor to be met.

11  Thus, all of the *Younger* abstention requirements have been met.  Thus, abstention is mandatory

12  unless an exception applies.

13  *iii.*  Younger *Abstention Exceptions*

14  The exceptions to *Younger* abstention include whether "there is a 'showing of bad faith,

15  harassment, or some other extraordinary circumstance that would make abstention

16  inappropriate.'"  *Bean*, 986 F.3d at 1133.  Bias in the state court proceeding is another exception.

17  *Morning Hill*, 259 F. Supp. 3d at 1125.  Another exception concerns irreparable harm.  *Bean*, 986

18  F.3d at 1133.

19  Here, there has been no showing of bad faith or harassment in the First State Court Action

20  and the Court can find no evidence of such.  (*See* ECF Nos. 3, 11.)  While Plaintiff alleges the

21  hearing officer in the August 15th administrative hearing displayed bias (ECF No. 11 at 7), "[t]he

22

23  judicial notice of an email from Plaintiff's counsel, but Plaintiff does not explain how this email,
    as opposed to court filings, is subject to judicial notice.  (*Id.* at 1–2.)  Thus, the Court GRANTS

24  Plaintiff's request for judicial notice as to the court filings and DENIES it as to the email.  *See*
    *Harris*, 682 F.3d at 1132 (noting courts may take judicial notice of the documents on file in

25  federal or state courts).

26  [8]  Plaintiff's only other legal authority under her argument that parallel jurisdiction is

27  appropriate is *Zinermon v. Burch*, 494 U.S. 113 (1990).  However, *Zinermon* addressed whether
    state remedies were relevant as to the existence of a 42 U.S.C. § 1983 cause of action, and the

28  opinion did not reference *Younger* abstention nor parallel state court proceedings.  *Id.* at 124.

14

party raising bias must overcome a presumption of honesty and integrity in those serving as adjudicators." *Morning Hill*, 259 F. Supp. 3d at 1125 (citing *Kenneally v. Lungren*, 967 F.2d 329, 333 (9th Cir. 1992)).  Even if Plaintiff could overcome this presumption as to the hearing officer, Plaintiff makes no claim of bias against the superior court (*see* ECF No. 11), and the Court cannot find evidence of bias in the First State Court Action.  Therefore, the Court does not find the exceptions for bad faith, harassment, or bias apply.

The irreparable harm exception applies only in "extraordinary circumstances where the danger of irreparable loss is both great and immediate."  *World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1082 (9th Cir. 1987).  This exception is narrowly applied because "if allegations that a plaintiff's constitutional rights were being violated were sufficient to constitute 'extraordinary circumstances,' this exception to *Younger* would swallow the rule." *Applied Underwriters, Inc. v. Lara*, 530 F. Supp. 3d 914, 939 (E.D. Cal. 2021).  Additionally, the standard for irreparable harm as a *Younger* exception is distinct from the showing of irreparable harm for injunctive relief.  *See id.* (noting the irreparable harm exception under *Younger* requires not only irreparable harm but also extraordinary circumstances).

Courts have found the irreparable harm exception can apply in situations involving a deprivation of a person's physical liberty that cannot be fully vindicated after trial.  *Bean*, 986 F.3d at 1134–35 (finding the exception for irreparable harm due to the forcible injection of antipsychotic medication); *Applied Underwriters*, 37 F.4th at 598 (noting a *Younger* exception applied to a case where the petitioner had been incarcerated for over six months without a bail hearing).

Here, the Court does not find the irreparable harm exception to *Younger* abstention applies.  This case does not involve deprivation to a person's physical liberty, nor does it involve a constitutional violation that approaches the level of a deprivation of a person's physical liberty. To the extent Plaintiff may assert she suffers irreparable harm because of the inadequacy of monetary damages, the Court finds this does not demonstrate the necessary "extraordinary circumstances" to apply this exception.  *See Applied Underwriters, Inc. v. Lara*, 530 F. Supp. 3d 914, 939 (E.D. Cal. 2021).

1   Additionally, the ability to have a state court decision reviewed by appellate state courts

2   also weighs against the irreparable harm exception.  *Applied Underwriters*, 37 F.4th at 598

3   (noting that even if the superior court adopted a proposed plan, the plaintiffs would have ample

4   opportunity for state appellate court review).  Here, the superior court in the First State Court

5   Action denied Plaintiff's *ex parte* motion to stay Zeus' euthanasia on September 14, 2022.  (ECF

6   No. 13-1 at 49.)  However, the superior court's denial of a preliminary injunction or TRO is

7   appealable.  *See Bustos v. Wells Fargo Bank, N.A.*, 39 Cal. App. 5th 369, 375 (2019) ("A TRO, as

8   an interim provisional order granting injunctive relief, is immediately appealable[.]"); *Busch v.*

9   *Hurwitz*, No. A097841, 2002 WL 31752266, at *3 (Cal. Ct. App. Dec. 10, 2002) (noting both an

10  order denying a preliminary injunction and an order denying a TRO are appealable).[9]  Therefore,

11  Plaintiff has had the opportunity to appeal the superior court's denial of her motion in the First

12  State Court Action.  The docket in the First State Court Action does not reflect any notice of

13  appeal of the denial of Plaintiff's *ex parte* motion.  This weighs against the irreparable harm

14  exception.

15      Accordingly, the Court finds no exception to *Younger* abstention applies.  Thus, the Court

16  will address the impact of *Younger* abstention on the instant action.

17          *iv.       Application of* Younger *Abstention*

18      "When a court abstains under *Younger*, claims for injunctive and declaratory relief are

19  typically dismissed."  *Herrera*, 918 F.3d at 1042; *see also San Remo Hotel v. City & Cty. of S.F.*,

20  145 F.3d 1095, 1103 (9th Cir. 1998) ("*Younger* abstention requires dismissal of the federal claim

21  for injunctive relief[.]").  However, the Ninth Circuit "has also recognized that, when a district

22  court abstains from considering a *damages* claim under *Younger*, it must *stay* — rather than

23  dismiss — the damages action until state proceedings conclude."  *Herrera*, 918 F.3d at 1042

24  (italics in original).

25      Plaintiff requests monetary, injunctive, and declaratory relief.  (ECF No. 11 at 20.)

26  Accordingly, the Court must deny the instant motion for TRO.  *See Joseph*, 2020 WL 1031899, at

27  _____

28  [9]      "The Court may cite unpublished California appellate decisions as persuasive authority." *Washington v. Cal. City Correction Ctr.*, 871 F. Supp. 2d 1010, 1028 n.3 (E.D. Cal. 2012).

*17. On the other hand, the Court may not dismiss the instant action because of Plaintiff's request for monetary relief. The FAC's prayer for relief does not clearly differentiate between what causes of action serve as the basis for monetary relief as opposed to the ones for those serving as the basis for injunctive and declaratory relief, or whether any causes of action are the basis for multiple forms of relief. (ECF No. 11 at 20–23.) Thus, the Court at this time will refrain from dismissing any of Plaintiff's claims as opposed to staying them.

The Ninth Circuit has found *Younger* abstention does not apply to a § 1983 claim for damages that alleges a Fourth Amendment violation for an unlawful search. *Herrera*, 918 F.3d at 1049. This exception applies even though it raises the possibility of piecemeal litigation. *Id.*

Here, Plaintiff's first claim alleges a § 1983 claim based on alleged Fourth, Fifth, and Fifteenth Amendment violations. (ECF No. 11 at 9–11.) In the first claim, Plaintiff alleges a Fourth Amendment violation due to the alleged seizure of Zeus without a warrant. (*Id.* at 10.) Plaintiff's first claim also asserts that she is entitled to damages. (*Id.* at 11.) Thus, to the extent Plaintiff's first claim seeks damages, as opposed to declaratory or injunctive relief, and is predicated upon an alleged Fourth Amendment violation, *Younger* abstention would not apply to that portion of the claim.

The Court recognizes this case presents difficult facts and is sympathetic to the situation at hand, especially considering there appear to be less drastic options available. However, *Younger* abstention is mandatory, and it requires dismissal of claims for injunctive relief. *See Canatella*, 404 F.3d at 1117; *Herrera*, 918 F.3d at 1042; *San Remo Hotel*, 145 F.3d at 1103. Therefore, the Court DENIES Plaintiff's motion for TRO and STAYS the instant action with the exception of Plaintiff's first claim but only to the extent the first claim seeks damages and is predicated on an alleged Fourth Amendment violation.

**IV.   CONCLUSION**

For the foregoing reasons, the Court hereby DENIES Plaintiff's Motion for Temporary Restraining Order. (ECF No. 3.) The Court STAYS the instant action with the exception of Plaintiff's first claim but only to the extent the first claim seeks damages and is predicated on an alleged Fourth Amendment violation.

1      The claims that the Court stays in the instant Order shall remain stayed until the Court

2  orders otherwise.  The parties shall file a Joint Status Report notifying the Court not later than

3  thirty (30) days from the conclusion of the underlying state proceedings and explaining why

4  *Younger* abstention is no longer warranted.

5      IT IS SO ORDERED.

6  **DATED:  September 28, 2022**

7                                                    _____

8                                                    Troy L. Nunley
                                                     United States District Judge

18